# marcap

MarCap Corporation

200 West Jackson
Suite 2000
Chicago, Illinois 60606

phone: 800.621.1677
fax: 312.984.1627
www.marcapcorp.com

**05110103**
MASTER EQUIPMENT LEASE NUMBER

## MASTER EQUIPMENT LEASE AGREEMENT

This Master Equipment Lease dated as of November 28, 2005 (the "Lease"), is entered into between MarCap Corporation, a Delaware corporation having its principal office at 200 West Jackson, Suite 2000, Chicago, Illinois 60606 ("Lessor"), and **Mobile PET/CT Associates, LLC**, a limited liability company organized under the laws of the state of Pennsylvania and having its chief executive office at 43 Leopard Road, Suite 200, Paoli, Pennsylvania 19301 ("Lessee").

1. **Lease.** Subject to the terms hereof, Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the equipment and other property (the "Equipment") described on all the equipment lease schedules ("Schedule or Schedules") to the Lease which may be executed from time to time by Lessor and Lessee, all of which are made a part and incorporated hereof. For the purposes of the Lease, each Schedule relating to one or more items of Equipment shall be deemed to incorporate all of the terms and provisions of the Lease. The term "Lease" as used herein shall mean this Lease and all Schedules.

2. **Term.** The Initial Term of the Lease for the items of Equipment included in a Schedule shall commence on the date such items are accepted by Lessee ("Commencement Date") and, subject to the terms hereof, shall continue for the period of time set forth on said Schedule.

3. **Rental Payments.** Lessee shall pay to Lessor, as rental for the Equipment, the periodic Rental Payments set forth on each Schedule. Rental Payments shall be due on the first day of the month (the "Payment Date") starting on the first month that occurs after the Commencement Date. If the Commencement Date falls on a day other than the Payment Date, in addition to the Rental Payments, Lessee shall pay an Interim Rent payment equal to the pro rata portion of a full Rental Payment (excluding any rent holidays, Skipped Rental Payments or Reduced Rental Payments) from the Commencement Date to the first regular monthly Payment Date. The Interim Rent payment and the first monthly payment will be due and payable on the first Payment Date. Subsequent Rental Payments shall be due on the first day of each month thereafter for the original term of the Schedule ("Initial Term") and any Renewal Term as may be applicable pursuant to Section 19 hereof. All Rental Payments shall be paid to Lessor at 200 West Jackson Blvd., Suite 2000, Chicago, Illinois 60606, or at such other address as Lessor may specify, without notice or demand by Lessor and without abatement, deduction or setoff. Rental Payments and any other payments due hereunder not received by Lessor within ten (10) days of the due date shall be subject to a service charge to compensate Lessor for its costs of administration in connection which such late payment(s) and shall be equal to the lesser of (i) five percent (5%) of the overdue payment, (ii) the maximum amount permitted by law.

4. **Estimated Cost of Equipment.** The Rental Payment set forth on each Schedule are based upon the estimated cost of the Equipment which shall be adjusted proportionately if the actual cost of the Equipment differs from the estimate. Lessee authorizes Lessor, with respect to each Schedule, (i) to so adjust the Rental Payment once the actual cost is known, (ii) to insert on such Schedule serial numbers or other more specific descriptions of the Equipment. "Cost," as used herein, means the total cost to the Lessor of purchasing and causing the delivery and installation of the Equipment and shall include taxes, transportation and any other charges paid by Lessor.

5. **Disclaimer of Warranties.** LESSEE ACKNOWLEDGES THAT: (I) THE EQUIPMENT IS OF A SIZE, DESIGN, CAPACITY AND MANUFACTURE SELECTED BY LESSEE; (II) LESSOR IS NOT A MANUFACTURER NOR A DEALER IN PROPERTY OF SUCH KIND AS THE EQUIPMENT OR ANY EQUIPMENT; (III) NEITHER THE VENDOR NOR ANY REPRESENTATIVE OF ANY VENDOR OR ANY MANUFACTURER OF THE EQUIPMENT IS AN AGENT OF LESSOR OR IS AUTHORIZED TO WAIVE OR ALTER ANY TERM OR CONDITION OF THIS LEASE; AND (IV) LESSOR HAS NOT MADE AND DOES NOT HEREBY MAKE ANY WARRANTY, WHETHER EXPRESS, IMPLIED OR OTHERWISE AS TO ANY MATTER WHATSOEVER, INCLUDING, WITHOUT LIMITATION, THE CONDITION, MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OF THE EQUIPMENT. No defect in, unfitness of, or an inability of Lessee to use any Equipment, howsoever caused, shall relieve Lessee from its obligation to pay Rental Payments or from any

Form LS1000-IR (070105)

other obligations the Lease. Lessor shall not in any event be responsible to Lessee or anyone claiming through Lessee for any damages, direct, consequential, or otherwise, resulting from the delivery, installation, use, operation, performance or condition of the Equipment, or any delay or failure by any vendor or supplier in delivering and/or installing any Equipment or performing any service for Lessee. Nothing herein shall be construed as depriving Lessee of whatever rights Lessor may have against any vendor or supplier of the Equipment, and Lessor hereby authorizes Lessee, at Lessee's expense, to assert for Lessor's account during the term of this Lease, all of Lessor's rights under any warranty or promise given by a vendor or supplier and relating to Equipment, so long as Lessee is not in default hereunder. Lessee may communicate with the vendor or supplier providing the Equipment and receive an accurate and complete statement of those promises and warranties, including any disclaimers and limitations of such warranties or remedies.

6. **Acceptance.** Lessee shall inspect each item of Equipment promptly upon delivery of the Equipment or, where applicable, the installation thereof. Lessee shall execute Lessor's form document acknowledging the delivery of the Equipment and Lessee's acceptance thereof within 72 hours of delivery, installation <u>and/or final acceptance of the equipment</u> (a "Delivery and Acceptance"). <u>"Final Acceptance" shall mean that all of the following have occurred: (a) The Equipment has been delivered and installed in accordance with the manufacturer's published specifications; (b) final calibration and checkout under the manufacturer's standard procedures have been completed; (c) the Equipment has performed in accordance with all published specifications (the foregoing shall constitute the acceptance test); and (d) Lessee has executed this Delivery and Acceptance Acknowledgement, which Lessee agrees to execute if the Equipment passes the acceptance test.</u> (a "Delivery and Acceptance"). Unless Lessee gives written notice to the vendor or supplier of the Equipment specifying a material defect in the Equipment, or other material and proper objection to the Equipment and delivers a copy of such notice to Lessor, notwithstanding the execution of, or failure to execute a Delivery and Acceptance, it shall be conclusively presumed between Lessor and Lessee that Lessee has fully inspected the Equipment, that the Equipment is in full compliance with the terms of this Lease, that the Equipment is in good condition (operating and otherwise) and repair, and that Lessee has unconditionally accepted the Equipment.

7. **Non-Cancelable Lease; Unconditional Obligations.** THIS LEASE CANNOT BE CANCELED OR TERMINATED EXCEPT BY LESSOR AS EXPRESSLY PROVIDED FOR HEREIN. LESSEE AGREES THAT LESSEE'S OBLIGATION TO PAY RENTAL PAYMENTS AND TO PAY AND PERFORM ALL OTHER OBLIGATIONS HEREUNDER SHALL BE ABSOLUTE, IRREVOCABLE, UNCONDITIONAL AND INDEPENDENT AND SHALL BE PAID OR PERFORMED WITHOUT ABATEMENT, DEDUCTION OR OFFSET OF ANY KIND WHATSOEVER.

8. **Maintenance.** Lessee will maintain the Equipment in good operating order and appearance, protect the Equipment from deterioration, other than normal wear and tear, and will not use the Equipment for any purpose other than that for which it was designed. Lessee will maintain in force a standard maintenance contract with the manufacturer of the Equipment or a party authorized by the manufacturer and acceptable to the Lessor to perform such maintenance (the "Maintenance Contractor"), and upon request will provide Lessor with a complete copy of that maintenance contract. Lessee's obligation regarding the maintenance of the Equipment will include, without limitation, all maintenance and repair recommended or advised either by the manufacturer, government agencies, or regulatory bodies and those commonly performed by prudent business and/or professional practice. Upon return or surrender of the Equipment, Lessee will provide a letter from the maintenance contractor certifying that the Equipment meets all current specifications of the manufacturer, is in compliance with all pertinent governmental or regulatory rules, laws or guidelines for its operation or use, is qualified for the maintenance contractor's standard maintenance contract and is at then current release, revision and engineering change levels. Lessee agrees to pay any costs necessary for the manufacturer to bring the Equipment to then current release, revision and engineering change levels and to re-certify the Equipment as eligible for such maintenance contract upon return or surrender of the Equipment. The Initial Term or Renewal Term of the Lease, as may be applicable, shall continue upon the same terms and conditions until recertification has been obtained.

9. **Security Deposit.** The security deposit, if any, specified on each Schedule shall secure the full and faithful performance of all agreements, obligations and warranties of Lessee hereunder, including, but not limited to, the agreement of Lessee to return the Equipment upon the expiration or earlier termination of this Lease in the condition specified. Such deposit shall not excuse the performance of any such agreements,

obligations or warranties of Lessee or prevent a default. Lessor may, at its sole discretion, apply all or any part of such security deposit toward discharge of any overdue obligation of Lessee. To the extent any portion of the security deposit is so applied by Lessor, Lessee shall forthwith restore the security deposit to its full amount. If upon the expiration of the term of this Lease, Lessee shall have fully complied with all of its agreements, obligations and warranties hereunder, any unused portion of such security deposit will be refunded to Lessee. Lessor shall not be obligated to pay interest on the security deposit.

10. **Insurance.** Lessee, at its expense, shall keep the Equipment insured against all risk of loss or physical damage (including comprehensive boiler and machinery coverage and earthquake and flood insurance if Lessor determines, in its sole discretion, that such events could occur in the area where the Equipment is located) for the full replacement value of the Equipment. Lessee shall further provide and maintain comprehensive public liability insurance against claims for bodily injury, death and/or property damage arising out of the use, ownership, possession, operation or condition of the Equipment, together with such other insurance as may be required by law or reasonably requested by Lessor. All said insurance shall name both Lessor and Lessee as parties insured and shall be in form and amount and with insurers satisfactory to Lessor, and Lessee shall furnish to Lessor, promptly upon Lessor's request, certified copies of or evidence of the policies of such insurance and evidence of each renewal thereof. Each insurer must agree, by endorsement upon the policy or policies issued by it, that it will give Lessor not less than 30 days written notice before such policy or policies are canceled or altered, and, under the physical damage insurance, (a) that losses shall be payable solely to Lessor, and (b) that no act or omission of Lessee or any of its officers, agents, employees or representatives shall affect the obligation of the insurer to pay the full amount of any loss. Lessee hereby irrevocably authorizes Lessor to make, settle and adjust claims under such policy or polices of physical damage insurance and to endorse the name of Lessee on any check or other item of payment for the proceeds thereof; it being understood, however, that unless otherwise directed in writing by Lessor, Lessee shall make and file timely all claims under such policy or policies, and unless Lessee is then in default, Lessee may, with the prior written approval of Lessor (which will not be unreasonably withheld) settle and adjust all such claims.

11. **Risk of Loss.** As used herein, the term "Event of Loss" shall mean any of the following events with respect to any item of the Equipment: (a) the actual or constructive total loss of such Equipment; (b) the loss, theft, or destruction of such Equipment or damage to such Equipment to such extent as shall make repair thereof uneconomical or shall render such Equipment permanently unfit for normal use for any reason whatsoever; or (c) the condemnation, confiscation, requisition, seizure, forfeiture or other taking of title to or use of such Equipment. EXCEPT AS EXPRESSLY HEREINAFTER PROVIDED, THE OCCURRENCE OF ANY EVENT OF LOSS OR OTHER DAMAGE TO OR DEPRIVATION OF USE OF ANY EQUIPMENT, HOWSOEVER OCCASIONED, SHALL NOT REDUCE OR IMPAIR ANY OBLIGATION OF LESSEE HEREUNDER, AND, WITHOUT LIMITING THE FOREGOING, SHALL NOT RESULT IN ANY ABATEMENT OR REDUCTION IN RENTAL PAYMENTS WHATSOEVER. Lessee hereby assumes and shall bear, from the time such risk passes to Lessor from the vendor or supplier of the Equipment to Lessor until expiration or termination of the Lease and return of the Equipment to Lessor, the entire risk of any Event of Loss or any other damage to or deprivation of use of the Equipment, howsoever occasioned. Upon the occurrence of any damage to any Equipment not constituting an Event of Loss, Lessee, at its sole cost and expense, shall promptly repair and restore such Equipment so as to return such Equipment to substantially the same condition as existed prior to the date of such occurrence (assuming such Equipment was then in the condition required by this Lease). Provided that Lessee is not then in default hereunder, upon receipt of evidence reasonably satisfactory to Lessor of completion of such repairs and restoration in accordance with the terms of this Lease, Lessor will apply any insurance proceeds received by Lessor on account of such occurrence to the cost of such repairs and restoration; it being understood, however, that if at such time Lessee shall be in default hereunder, Lessor may, in its sole discretion, retain any part or all of such proceeds and apply same to any obligations of Lessee to Lessor. Upon the occurrence of an Event of Loss, Lessee shall immediately notify Lessor in writing of such occurrence and shall fully inform Lessor of all details with respect thereto, and, on or before the first to occur of (i) 30 days after the date upon which such Event of Loss occurs, or (ii) 5 days after the date on which either Lessor shall receive any proceeds of insurance in respect of such Event of Loss or any underwriter of insurance on the Equipment shall advise Lessor or Lessee in writing that it disclaims liability in respect of such Event of Loss, if such be the case, Lessee shall pay to Lessor an amount equal to the sum of (a) accrued

but unpaid Rental Payments and other sums due under the Lease, plus (b) the present value of all future Rental Payments reserved in the Lease and contracted to be paid over the unexpired term discounted at 6% per annum plus (c) the present value of Lessor's residual value of the Equipment as of the expiration of the term discounted at 6% per annum (the "Stipulated Loss Value"), less the amount of any insurance proceeds or condemnation or similar award by a governmental authority then actually received by Lessor on account of such Event of Loss. No delay or refusal by any insurance company or governmental authority in making payment on account of such Event of Loss shall extend or otherwise affect the obligations of Lessee hereunder. Lessee shall continue to pay all Rental Payments and other sums due hereunder up to and including the date upon which the Stipulated Loss Value is actually received in full by Lessor, whereupon this Lease with respect to such Equipment shall terminate and all Rental Payments reserved hereunder with respect to such Equipment from the date such payment is received in full by Lessor, as aforesaid, to what would have been the end of the term hereof, shall abate. No such payment shall affect Lessee's obligations with respect to Equipment not subject to an Event of Loss. After receipt by Lessor of all sums due hereunder, Lessor will upon request of Lessee transfer its interest, if any, in such Equipment to Lessee on an "as is, where is" basis and without warranty by or recourse to Lessor. The proceeds of insurance in respect of an Event of Loss and any award on account of any condemnation or other taking of any Equipment by a governmental authority shall be paid to Lessor and applied by Lessor against the obligation of Lessee to pay Lessor the Stipulated Loss Value of such Equipment (or, if Lessee shall have first paid the Stipulated Loss Value in full, shall be promptly paid over by Lessor to Lessee up to the extent necessary to reimburse Lessee for payment of the Stipulated Loss Value); and the balance, if any, of such proceeds or award shall be paid over promptly by Lessor to Lessee if Lessee is not then in default hereunder. If Lessee is in default hereunder, Lessor may at its option apply all or any part of such proceeds to any obligation of Lessee to Lessor.

12. **Indemnity.** Lessee shall indemnify and hold Lessor harmless from and against any and all claims, costs, expenses (including attorneys' fees) losses and liabilities of whatsoever nature arising out of or occasioned by or in connection with (i) the purchase, delivery, installation, acceptance, rejection, ownership, leasing, possession, use, operation, condition or return of any Equipment including, without limitation, any claim alleging latent or other defects and any claim arising out of strict liability in tort, or (ii) any breach by Lessee of any of its obligations hereunder.

13. **Taxes.** Lessee shall pay as and when due, and indemnify and hold Lessor harmless from and against, all present and future taxes and other governmental charges (including, without limitation, sales, use, leasing, stamp and personal property taxes and license and registration fees), and amounts in lieu of such taxes and charges and any penalties and interest on any of the foregoing, imposed, levied or based upon, in connection with or as a result of the purchase, ownership, delivery, leasing, possession or use of the Equipment or the exercise by Lessee of any option hereunder, or based upon or measured by Rental Payments or receipts with respect to this Lease. Lessee shall not, however, be obligated to pay any taxes on or measured by Lessor's net income. Lessee authorizes Lessor to add to the amount of each Rental Payment any sales or leasing tax that may be imposed on or measured by such Rental Payment at any time. Notwithstanding the foregoing, unless and until Lessor notifies Lessee in writing to the contrary, Lessor will file all personal property tax returns covering the Equipment and will pay the personal property taxes levied or assessed thereon. Lessee, upon receipt of invoice, will promptly pay to Lessor, as additional rent, an amount equal to the lesser of (i) property taxes so paid by Lessor plus the cost incurred by Lessor if Lessor elects to contest such tax, or (ii) the original property tax assessment. If not thereby subjecting the Equipment to forfeiture or sale, Lessee may at its expense contest in good faith, by appropriate proceedings, the validity and/or amount of any of the taxes or other governmental charges described above, provided that prior written notice of any such contest shall be given to Lessor together with security satisfactory to Lessor for the payment of the amount being contested and provided further that Lessor has not contested such tax.

14. **Notices; Inspection.** Lessee shall give Lessor immediate notice of any attachment, judicial process, lien, encumbrance or claim affecting the Equipment, any loss or damage to the Equipment or material accident or casualty arising out of the use, operation or condition of the Equipment, as well as any change in the residency or principal place of business of Lessee or any guarantor of Lessee's obligations hereunder ("Guarantor"). Lessor may (but need not), for the purpose of inspection, during reasonable business hours, enter from time to time upon any premises where the Equipment is located.

15. **Alterations.** Lessee shall not make or permit

Form LS1000-IR (070105)

any changes or alterations to the Equipment without Lessor's prior written consent, unless said changes are covered under the Maintenance Contract. All accessories, replacements, parts and substitutions for or which are added or attached to the Equipment shall become the property of Lessor, shall be included in the definition of Equipment, and shall be subject to this Lease.

16. **Title; Additional Assurances.** Lessor shall have good and marketable title to the items of Equipment subject to this Lease and Lessee shall otherwise keep the Equipment free from all liens and encumbrances. Lessee will promptly execute, or otherwise authenticate, and deliver to Lessor such further documents, instruments, assurances and other records, and take such further action as Lessor from time to time may reasonably request in order to carry out the intent and purpose of this Lease and to establish and protect the rights and remedies created or intended to be created in favor of Lessor under the Lease (including, without limitation (i) lien searches and (ii) such UCC financing statements, fixture filings and waivers as reasonably may be required by Lessor in connection with any change in circumstances relating to Lessee, the Equipment or otherwise); provided, however, Lessee hereby authorizes Lessor to file any and all of the same without Lessee's authentication, to the extent permitted by applicable law. Lessee shall provide written notice to Lessor not less than thirty (30) days prior to any contemplated change in the name, the jurisdiction of organization, or address of the chief executive office, of Lessee.

17. **Quiet Enjoyment.** So long as Lessee shall not be in default and fully performs all of its obligations hereunder, Lessor will not interfere with the quiet use and enjoyment of the Equipment by Lessee.

18. **Return.** Upon Lessee's election to return the Equipment to Lessor as provided by Section 19 hereof or earlier termination of this Lease, Lessee, pursuant to Lessor's instructions and at Lessee's sole expense, will cause the Equipment to be deinstalled, audited by the maintenance contractor or another party that is acceptable to Lessor, packed and shipped fully insured and in accordance with the manufacturer's instructions to the destination specified by Lessor. All returned Equipment shall be in good operating order and appearance, other than normal wear and tear and shall comply with all of the requirements of Section 8 hereof. Lessee shall pay to Lessor, on demand, the cost of any repairs necessary to place the Equipment in the condition required by this Lease.

19. **Expiration; Renewal; Purchase; Return.** Provided that there is no Event of Default or other event which with notice or lapse of time or both would become an Event of Default has occurred and is continuing under the Lease or any Schedule, Lessee shall select one of the following options by notifying Lessor in advance and in writing, in the manner provided in Section 25 hereof, not less than 90 days but not more than 180 days before the last day of the Initial Term of any Schedule that Lessee intends to: (i) renew such Schedule with respect to all, but not less than all of the Equipment thereunder for an additional term (a "Renewal Term") of twelve additional (12) months at the Rental Payment rate in effect at the end of such Initial Term, which shall be paid to Lessor monthly in advance, plus any applicable taxes in the same manner as provided in the Lease and such Schedule; or (ii) purchase all, but not less than all, of the Equipment under such Schedule for the purchase price identified thereon, in the manner provided by such Schedule, plus any applicable sales or other transfer taxes that are payable as a result of such sale, plus any other amounts that may remain unpaid to Lessor; or (iii) return all, but not less than all, of the Equipment under such Schedule in accordance with Section 18 hereof. Upon the expiration of any Renewal Term, Lessee shall once again select one of the three options provided above in the manner provided in this Section. IF NONE OF THE ABOVE OPTIONS ARE DULY AND TIMELY SELECTED AND EXERCISED BY LESSEE, OR IF LESSEE FAILS TO RETURN THE EQUIPMENT ON OR BEFORE THE LAST DAY OF AN INITIAL TERM AFTER SELECTING OPTION (iii) ABOVE, FOR ANY REASON DURING THE INITIAL TERM OR AN RENEWAL TERM, THEN LESSEE SHALL BE DEEMED TO HAVE SELECTED OPTION (i) OF THIS SECTION.

20. **Lessee's Warranties.** In order to induce Lessor to enter into this Lease and to lease the Equipment to Lessee hereunder, Lessee represents and warrants as to the following that: (a) **Lessee's Disclosures.** (i) its applications, financial statements and reports which have been submitted by it to Lessor are, and all information hereafter furnished by Lessee to Lessor are and will be, true and correct in all material respects as of the date submitted; (ii) as of the date hereof and the date of any Schedule and any lease Commencement Date, there has been no material adverse change in any matter stated in such applications, financial statements and reports; (iii) there are no known contingent liabilities or liabilities for taxes of Lessee which are not reflected in said financial statements or reports; and, (iv) none of the foregoing omit or omitted to state any material fact; (b) **Lessee's Organization.** Lessee's

legal name, state of organization and chief executive office is as first set forth above and Lessee is duly organized, validly existing and in good standing in such state and duly qualified to do business in each state where the Equipment will be located; (c) Lessee's **Power and Authority.** Lessee has full power, authority and legal right to execute, deliver and perform this Lease and any Schedule thereto, and the execution, delivery and performance hereof has been duly authorized by all necessary action of Lessee; (d) Lease **Enforceability.** This Lease and any Schedule or other document executed in connection therewith has been duly executed and delivered by Lessee and constitutes a legal, valid and binding obligation of Lessee enforceable in accordance with its terms; (e) Lessee's **Consents and Permits.** The execution, delivery and performance of this Lease does not require any approval or consent of any stockholders, partners or proprietors or of any trustee or holders of any indebtedness or obligations of Lessee, and will not contravene any law, regulation, judgment or decree applicable to Lessee, or the certificate of organization, partnership agreement or by-laws of Lessee, or contravene the provisions of, or constitute a default under, or result in the creation of any lien upon any property of Lessee under any mortgage, instrument or other agreement to which Lessee is a party or by which Lessee or its assets may be bound or affected; (f) **Lessee's Operations.** (i) Lessee shall not commence or conduct the operation of the Equipment, except for testing or diagnostic purposes, until such time as Lessor has received its form Delivery and Acceptance for the Equipment executed by the Lessee; (ii) Lessee is not and shall not be in violation of any laws, ordinances, decrees, orders, governmental rules or regulations to which it is subject and Lessee has, or when required by applicable law will have, all the licenses, accreditations, permits and regulatory approvals necessary for the operation of its business and the performance of this Lease; (g) **Lessor's Title to Equipment.** On each Commencement Date, Lessor shall have good and marketable title to the items of Equipment being subjected to this Lease on such date, free and clear of all liens created by or through Lessee.

21. **Assignment.** Lessee hereby consents to any assignment by Lessor and any reassignment of this Lease or Rental Payments hereunder with or without notice. LESSEE AGREES THAT THE RIGHTS OF ANY ASSIGNEE SHALL NOT BE SUBJECT TO ANY DEFENSE, SETOFF OR COUNTERCLAIM THAT LESSEE MAY HAVE AGAINST LESSOR, AND THAT ANY SUCH ASSIGNEE SHALL HAVE ALL OF LESSOR'S RIGHTS HEREUNDER, BUT NONE OF LESSOR'S OBLIGATIONS. Lessee shall not assign the Lease, any Schedule thereto, nor any of Lessee's rights in connection herewith nor may any of Lessee's duties hereunder be delegated to any other person or entity, whether by Lessee's own act or by operation of law, without the prior written consent of Lessor and any such attempted assignment shall be void. Lessee further agrees it will not, without the prior written consent of Lessor, allow the Equipment to be used by persons other than the duly authorized employees of Lessee, or to rent or sublet any Equipment to others or relocate any Equipment from the premises where the Equipment originally installed and as is set forth in the applicable Schedule.

22. **Lessor's Right to Terminate.** Without limiting the rights of Lessor in the Event of a Default by Lessee, Lessor shall at any time prior to acceptance of any Equipment have the right to terminate this Lease with respect to such Equipment if: (a) there shall be an adverse change in Lessee's or any Guarantor's financial position or credit standing; or (b) Lessor otherwise in good faith deems itself insecure; or (c) such Equipment is not for any reason delivered to Lessee within 90 days; or (d) Lessee rejects or attempts to reject delivery of any Equipment. Upon a termination by Lessor pursuant to this Section, Lessee shall forthwith reimburse to Lessor all sums paid by Lessor with respect to such Equipment and pay to Lessor all other sums then due hereunder, including all costs and fees in connection with such termination; whereupon, if Lessee is not then in default and has then fully performed all of its obligations hereunder, Lessor will, upon request of Lessee, transfer to Lessee without warranty or recourse any rights that Lessor may then have with respect to such Equipment.

23. **Right to Perform Obligations.** If Lessee fails to make any payment or perform any act or obligation required of Lessee hereunder, Lessor may (but need not) at any time thereafter make such payment or perform such act or obligation at the expense of Lessee. Any expense so incurred by Lessor shall constitute additional rent hereunder payable by Lessee to Lessor upon demand with interest at the Overdue Rate, as hereinafter defined.

24. **Events of Default.** An Event of Default shall occur hereunder if the owner(s) or interest holders of Lessee sell or otherwise transfer the controlling interest in Lessee or if Lessee: (i) fails to pay any Rental Payment or other payment when due and such failure shall continue for more than ten (10) days; or (ii) attempts to or does remove from the premises, sell, transfer, encumber, part with possession of, or sublet any item of Equipment; or (iii) breaches or shall have

Form LS1000-IR (070105)

breached any representation or warranty made or given by Lessee or Guarantor in this Lease or in any other document furnished to Lessor in connection herewith, or any such representation or warranty shall be untrue or, by reason of failure to state a material fact or otherwise, shall be misleading; or (iv) fails to perform or observe any other covenant, condition or agreement to be performed or observed by it hereunder, including but not limited to Lessee's obligation to provide financial statements in the manner provided in Section 28 hereof and such failure or breach of representation or warranty continues un-remedied for a period of thirty (30) days after the earlier of (a) the date on which Lessee obtains, or should have obtained knowledge of such failure or breach; or (b) the date on which notice thereof shall be given by Lessor to Lessee; or (v) shall become insolvent or bankrupt or make an assignment for the benefit of creditors or consent to the appointment of a trustee or receiver, or a trustee or receiver shall be appointed for a substantial part of its property without its consent, or bankruptcy or reorganization or insolvency proceeding shall be instituted by or against Lessee; or (vi) ceases doing business as a going concern; or (vii) shall have terminated its legal existence, consolidated with, merged into, or conveyed leased substantially all of its assets to any person or otherwise undergoes a material change in the composition of Lessee's ownership, stockholders, unit-owners, partners or management; or (viii) is in breach of, or default under, any lease or other agreement at any time executed with Lessor or any other lessor or with any lender, landlord, mortgagee or other obligor of Lessee, including but not limited to those agreements and ancillary documents that have been executed by Lessee in addition to the Lease; or (ix) if there exists, in Lessor's sole discretion, a material adverse change in Lessee's, or any guarantor's hereof, financial position or credit standing; or (x) Lessor may otherwise and in good faith deems itself insecure.

25. **Remedies Upon Default.** Upon the occurrence of any Event of Default, Lessor may, at its option, do one or more of the following: (a) terminate this Lease, all Schedules thereto and all Lessee's rights hereunder; (b) proceed by appropriate court action to enforce performance of the terms of this Lease and/or recover damages for the breach hereof; (c) directly or by its agent, and without notice or liability or legal process, enter upon any premises where any Equipment may be located, take possession of the Equipment, and either store it on said premises without charge or remove the same (any damages occasioned by such taking of possession, storage or removal being hereby waived by Lessee); and/or (d) declare as immediately due and payable and forthwith recover from Lessee, as liquidated damages, an amount equal to the then aggregate Stipulated Loss Value of the Equipment defined in Section 11 hereof. In the event of any repossession of any Equipment by Lessor, Lessor may (but need not), without notice to Lessee, (A) hold or use all or part of such Equipment for any purpose whatsoever, (B) sell all or part of such Equipment at public or private sale for cash or on credit and/or (C) relet all or part of such Equipment upon such terms as Lessor may solely determine; in each case without any duty to account to Lessee except as herein expressly provided. After any repossession of Equipment by Lessor there shall be applied on account of the obligations of Lessee one of the following, chosen at the option of Lessor: (x) the net proceeds actually received by Lessor from a sale of such Equipment, after deduction of all expenses of sale and other expenses recoverable by Lessor hereunder, or (y) the then "Fair Market Value" of such Equipment, which shall mean a price equal to the amount of value that would be received in an arm's length retail transaction between an informed and willing buyer who is to be the end-user of the Equipment and who is not a dealer, distributor, wholesaler or re-seller of such type of equipment, and an informed and willing seller under no compulsion to sell the Equipment, less of the aggregate costs of all expenses necessary to effect such a sale, including reconditioning and transportation; and Lessee shall remain liable, subject to all provisions of this Lease, for the balance of the Stipulated Loss Value. Interest shall accrue at the rate of 1½% per month, or the maximum rate permitted by law, on any sums due Lessor that are not timely paid in the manner provided herein (the "Past Due Rate") and shall continue to accrue until such time as Lessor receives such past due sums in full and all interest that has accrued thereon. No termination, repossession or other act by Lessor after default shall relieve Lessee from any of its obligations hereunder. In addition to all other charges hereunder, Lessee shall pay to Lessor, on demand, all fees, costs and expenses incurred by Lessor as a result of such default, including without limitation, Lessor's reasonable attorneys', appraisers' and brokers' fees and all other expenses and costs of removal, storage, transportation, insurance and disposition of the Equipment (except to the extent deducted from the Fair Market Value or net proceeds of sale, as aforesaid). In the event that any court of competent jurisdiction determines that any provision of this Section is invalid or unenforceable in whole or in part, such determination shall not prohibit Lessor from establishing its damages sustained as a result of any breach of this Lease in any action or proceeding in which Lessor seeks to recover such damages. The remedies provided herein in favor of Lessor shall not be

exclusive, but shall be cumulative and in addition to all other remedies existing at law or in equity, any one or more of which may be exercised simultaneously or successively.

26. **Non-Waiver.** Lessor's failure at any time to require strict performance by Lessee of any provision hereof shall not waive or diminish Lessor's rights thereafter to demand strict performance thereof or of any other provision. None of the provisions of this Lease shall be held to have been waived by any act or knowledge of Lessor, but only by a written instrument executed by Lessor and delivered to Lessee. Waiver of any default shall not be a waiver of any other or subsequent default.

27. **Communications.** Any notice or other communication required or desired to be given hereunder shall be given in writing and shall be deemed to have been duly given and received when sent by confirmed express mail, when delivered by hand or by confirmed Federal Express delivery or other reputable overnight courier or by facsimile on the date actually received by the addressee and, when deposited in the United States mail, registered or certified, postage prepaid, return receipt requested, on the third business day succeeding the day on which such notice was mailed, addressed to the respective addresses of the parties set forth at the beginning of this Lease or any other address designated by notice served in accordance herewith.

28. **Financial and Other Information.** Lessee shall furnish to Lessor, at its own cost and expense, the following financial and other information about the condition and affairs of Lessee and any Guarantor; (a) within 120 days of the expiration of each fiscal year of such party, audited or reviewed financial statements, and within 60 days of each fiscal quarter, unaudited financial statements certified as true and correct by such party, consisting in each case of a balance sheet, income statement and statement of cash flows, all prepared in accordance with generally accepted accounting principles, consistently applied; (b) such other information as Lessor may reasonably request from time to time. In the event Lessee fails or refuses to provide the aforesaid financial information in a timely manner, such failure or refusal shall be subject to same the service charge as for a late payment as provided in Section 3 hereof. Lessee authorizes Lessor to obtain credit bureau reports and make any other credit inquiries that Lessor determines are appropriate, in Lessor's sole discretion. Each time Lessee requests from Lessor a statement of the outstanding amount of the indebtedness owed under the Lease, Lessee shall pay Lessor a fee of $150.00 for each such request to compensate Lessor for its costs of administration in connection which such requests.

29. **Survival.** Lessee's representations, warranties, covenants and indemnities hereof shall survive the expiration or other termination of the Lease.

30. **Choice of Law; Venue.** THIS LEASE, ITS SCHEDULES, RIDERS, ANCILLARY DOCUMENTS AND AMENDMENTS THERETO SHALL BE GOVERNED IN ALL RESPECTS BY THE LAWS OF THE STATE OF ILLINOIS. IN ORDER TO INDUCE LESSOR TO EXECUTE THIS LEASE, LESSEE HEREBY AGREES THAT ALL ACTIONS OR PROCEEDINGS ARISING DIRECTLY OR INDIRECTLY FROM THIS LEASE SHALL BE LITIGATED ONLY IN COURTS (STATE OR FEDERAL) HAVING SITUS IN THE STATE OF ILLINOIS AND THE COUNTY OF COOK UNLESS LESSOR, IN ITS SOLE DISCRETION, WAIVES THIS PROVISION. LESSEE HEREBY EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR PROCEEDING COMMENCED BY LESSOR IN ANY STATE OR FEDERAL COURT LOCATED WITHIN THE STATE OF ILLINOIS. LESSEE WAIVES ANY CLAIM THAT ANY ACTION INSTITUTED BY LESSOR HEREUNDER IS IN AN INCONVENIENT FORUM OR AN IMPROPER FORUM BASED ON LACK OF VENUE. TO THE EXTENT PERMITTED BY LAW, LESSEE HEREBY WAIVES TRIAL BY JURY AND ANY RIGHT OF SETOFF OR COUNTERCLAIM IN ANY ACTION BETWEEN LESSOR AND LESSEE.

31. **Security Interest.** To the extent that any of the transactions evidenced by Schedules are secured transactions, Lessee hereby grants to Lessor a security interest in the Equipment described on such Schedules as security for all Lessee's obligations and liabilities under the Lease and Lessee authorizes Lessor to disburse the purchase price of such Equipment directly to the vendor(s) thereof.

32. **Lessee Waivers.** TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE HEREBY WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON A LESSEE BY SECTIONS 2A-508 THROUGH 2A-522 OF THE UNIFORM COMMERCIAL CODE, INCLUDING, WITHOUT LIMITATION, THE RIGHT TO (I) CANCEL THIS LEASE; (II) REPUDIATE THIS LEASE; (III) REJECT THIS LEASE; (IV) REVOKE

ACCEPTANCE OF THE EQUIPMENT; (V) RECOVER DAMAGES FROM LESSOR FOR ANY BREACH OF WARRANTY OR ANY OTHER REASON; (VI) CLAIM A SECURITY INTEREST IN ANY REJECTED PROPERTY IN LESSEE'S POSSESSION; (VII) DEDUCT ALL OR ANY PART OF CLAIMED DAMAGES RESULTING FROM LESSOR'S DEFAULT; (VIII) ACCEPT PARTIAL DELIVERY OF THE EQUIPMENT; (IX) "COVER" BY MAKING ANY PURCHASE OR LEASE OF EQUIPMENT IN SUBSTITUTION OF THE EQUIPMENT; (X) RECOVER ANY GENERAL, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES FROM LESSOR FOR ANY REASON.

33. **Counterparts; Facsimile Execution.** The Lease may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Lease. Delivery of an executed counterpart of the Lease by facsimile shall be equally as effective as delivery of a manually executed counterpart. Any party delivering an executed counterpart of the Lease by facsimile also shall deliver a manually executed counterpart of the Lease, but the failure to deliver a manually executed counterpart shall not affect the validity, enforceability, and binding effect of the Lease.

34. **Miscellaneous.** The Lease is submitted by Lessee to Lessor for its acceptance or rejection and shall not become effective, and shall impose no obligations on Lessor until it is accepted by Lessor in writing at its offices in Chicago, Illinois. If any provision of this Lease or the application thereof is hereafter held invalid or unenforceable, the remainder of this Lease shall not be affected thereby, and to this end the provisions of this Lease are declared severable. The titles to the Sections of the Lease shall not be considered in the interpretation of this Lease. The Lease (including the Schedules and any Riders hereto) sets forth the entire understanding between the parties and may not be modified except in a writing signed by both parties. If there is more than one Lessee, the obligations of Lessee hereunder as co-lessees and are joint and several. The necessary grammatical changes required to make the provisions hereof apply to corporations, partnerships, limited liability companies and/or individuals, whether male or female, shall in all cases be assumed as though in each case fully expressed. Subject to the terms hereof, this Lease shall be binding upon and inure to the benefit of Lessor and Lessee and their respective personal representatives, successors and assigns. The individuals executing this Lease on behalf of Lessee personally warrant that they are doing so pursuant to due authorization by the Lessor as required by Lessor's articles, bylaws and/or Lessor's membership, partnership or operating agreement and that by so executing this Lease, Lessee is being bound hereby.

## SIGNATURE PAGE – EQUIPMENT LEASE NO. 05110103

Dated as of the day and year first above written.

Lessee: Mobile PET/CT Associates, LLC
(please print full legal name)

By: _____
(signature of duly authorized representative)

Print Name: Ronald Lissak

FEIN: 59-3811249

Title: Member

Address: 43 Leopard Road, Suite 200
Paoli, PA 19301

Telephone: 610-993-1640 x 204

Witness:
Signature: Mary Sigovich
Print Name: Mary Sigovich

Accepted by Lessor at Chicago, Illinois

MarCap Corporation

By: _____
Peter Myhre, President

Form LS1000-IR (070105)

Page 10 of 10